**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**CIVIL ACTION NO. 3:10-CV-652-JDM**

THOMAS M. DEAN                                                                                      PLAINTIFF

V.

PIKE ELECTRIC COMPANY, et. al                                                        DEFENDANT

**MEMORANDUM OPINION**

    Pike Electric Company ("Pike") has filed a motion for partial summary judgment regarding Mr. Dean's claim against it for vicarious liability for punitive damages. Having considered the motion, and all responses thereto, and being otherwise sufficiently advised, the court will enter an order granting the motion. It is clear that Mr. Burgess has struggled with moderating his alcoholism for decades, but there exists no evidence that his employer, Pike, should have anticipated that he would operate a company vehicle while intoxicated.

**I.**

    This is a personal injury case that arises out of a four-vehicle collision that occurred in February 2009. Defendant Gary Burgess, a Pike employee, was driving a Pike vehicle that was involved in the accident, and Mr. Burgess was on duty and significantly under the influence of alcohol.[1] At the time of the accident, Mr. Burgess had been employed by Pike for twenty-four years and, during those years, had been arrested three times for driving his own vehicle while intoxicated. He had also been reprimanded and penalized once by Pike for operating a company vehicle while under the influence of alcohol. Stated in this way, the statistics beg the question

---

[1] Plaintiff asserts, and the court must accept his assertion as true for the purposes of this opinion, that a breathalyzer test administered at the scene indicated that Mr. Burgess had a blood alcohol level of at least .308 (30.9g of alcohol for every 100mL of blood).

why Pike ever placed the keys to a company vehicle in Mr. Burgess's hands, much less why they did so repeatedly. Yet, when dates and circumstances are supplied, the picture is different:

| Year | Time Between Incidents | Event | Off-Duty/ Personal Vehicle | On-Duty/ Company Vehicle | Pike Aware of Event? |
|---|---|---|---|---|---|
| 1984 |  | Hired by Pike | n/a | n/a | n/a |
|  | 18 months |  |  |  |  |
| 1985 |  | Drunk-driving citation | YES |  | NO |
|  | 6 years |  |  |  |  |
| 1991 |  | Drunk-driving citation | YES |  | NO |
|  | Almost 3 years |  |  |  |  |
| 1994 |  | Drunk-driving citation | YES |  | NO |
|  | 10 years |  |  |  |  |
| 2004 |  | Driving a company vehicle in circles off public roads, but while drunk |  | YES | YES and required six-weeks of treatment and random testing for one-year thereafter |
|  | 5 years |  |  |  |  |
| 2009 |  | Driving a company vehicle while drunk and on public roads |  | YES | YES and fired Mr. Burgess |

It is undisputed that Pike was not aware of Mr. Burgess's off-duty drunk-driving arrests, the last one of which was ten years prior to his first on-duty incident in 2004. It is also undisputed that, after the 2004 incident, Pike required Mr. Burgess to undergo a six-week intensive treatment program for alcoholism, suspended his company driving privileges until he completed that treatment, and for one year thereafter subjected him monthly to random breathalyzer tests, all of which were negative. Mr. Burgess also signed an agreement to attend

aftercare group meetings and Alcoholics Anonymous for a period of two years. Although Pike knew of this agreement, it did not monitor Mr. Burgess's attendance and was not aware that he did not honor the agreement.

By 2009, Mr. Burgess had resumed significant daily consumption of vodka, but there exists no evidence that Pike was aware of this regular, daily intake. It is undisputed, however, that Mr. Burgess's supervisor was aware of Mr. Burgess's diagnosis of alcoholism, had seen him drinking in a hotel bar the night before the accident, and tried unsuccessfully to contact Mr. Burgess thirty-four times after the two separated in the middle of the shift on the day of the accident. Mr. Dean concedes, however, that Mr. Burgess had not been drinking before his supervisor left his presence, even though his work day started at 7:00 a.m. and his supervisor did not leave him until 2:30 p.m.

## II.

Kentucky Revised Statute 411.184 governs whether punitive damages may be recovered in this matter and states: "In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." Ky. Rev. Stat. § 411.184(3). Although the statute permits an employer's vicarious liability for the actions of one of its employees, it also imposes significant limits on that potential liability. *See McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 841-42 (W.D. Ky. 2007) ("Very few cases on record have recognized vicarious liability for punitive damages.").

As Judge Heyburn noted in *Estate of Presley v. CCS of Conway,* 2004 WL 1179448, *4 (W.D. Ky. 2004)(documenting Kentucky cases regarding vicarious liability for punitive damages), there are few published cases in Kentucky that affirm a finding of vicarious liability

for punitive damages, and those that do impose liability because the employer either authorized or "should have anticipated" the conduct in question. Neither party asserts that Pike Electric either authorized or ratified Mr. Burgess's operation of a Pike vehicle while drunk and on duty, so the only question for this court is whether Pike should have anticipated that Mr. Burgess would do so.

The few Kentucky Supreme Court cases that have permitted an employer's vicarious liability for punitive damages have done so only where the primary tortfeasor previously exhibited a pattern of conduct similar to the gross negligence at issue, such that his employer should have reasonably expected the conduct to recur. *See Estate of Presley*, 2004 WL 1179448. In *McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 841-42 (W.D. Ky. 2007)(Russell, J.), a case relied upon by defendant Pike in its motion, the court analyzed the cases cited in *Presley* and determined that vicarious liability for punitive damages was not appropriate. *McGonigle* is not directly on point with this case, but is sufficiently similar for this court to find its reasoning persuasive.

In *McGonigle*, the employee caused an accident by driving a company vehicle while drunk and off duty. The employee in that case had two prior DUI arrests before he started working with the company and, even though the company was aware of the arrests, the most recent of them was six and a half years prior to the accident at issue. Moreover, there were no known instances in which he drove a company vehicle while drunk and on duty. Judge Russell did not consider those facts sufficient to establish a pattern, much less one about which the employer should have been aware. He found particularly significant the several year interval between each incident, and distinguished *Kentucky Farm Bureau Mut. Ins. Co. v. Troxell,* 959 S.W.2d 82, 85-86 (Ky. 1997), a case relied upon by the plaintiff, in which the employer knew

4

that the employee had committed similar unacceptable claims handling practices in the course of his duties at work, and thus his employer should have anticipated that he would continue his misdeeds. *McGonigle*, 481 F. Supp. 2d at 842.

In this matter, although Mr. Burgess had been cited three times by the police for driving while intoxicated, each time he was indisputably off-duty and operating his own vehicle. Moreover, the company was not aware of any of these arrests,[2] and there were significant temporal gaps between his instances of drunk driving. The first gap, which occurred between 1984 and 1985, is the shortest -- eighteen months. He was not cited again for another six years and not again until three years after that. Ten more years passed between his last citation by the police and the first instance known to Pike in which Mr. Burgess operated a company vehicle while drunk and on duty, and five years passed before he did it again.

In between the two on-duty instances, he underwent intensive treatment for his alcoholism, was subjected to random breathalyzer tests each month for a year, entered Alcoholics Anonymous, and had a sponsor. While it is true that Mr. Burgess's supervisor was aware that he had been drinking the night before the accident, Mr. Burgess was sober from the time he started work at 7:30 a.m. and remained so, in his supervisor's presence, until 2:30 p.m. Although Mr. Burgess's supervisor tried unsuccessfully to reach him many, many times after 2:30, this fact does not trigger the "should have anticipated" requirement of the punitive damages statute. In the five years since his prior incident, Mr. Burgess had no further drunk driving arrests or incidents either at work or off duty, and there is no evidence that he had arrived at work intoxicated since his last incident, and he had not done so on the day of the accident.

---

[2] Mr. Dean asserts that Pike would have been aware of the arrests had it properly and consistently complied with the requirements of the Federal Motor Carrier Safety Administration regulations found at 49 C.F.R. § 391.25. Even if the court accepts this as true, it is an argument that Pike inaction was negligent *per se*, not that it was grossly negligent, as is required by the punitive damages statute.

Consequently, although Mr. Burgess clearly as struggled with overconsumption of alcohol at various times in his adult life, he has not done so with sufficient regularity or consistency for this court to predict that the Kentucky Supreme Court would deem his lapses a pattern of which Pike should have been aware about which it could have taken additional steps to prevent the accident.

**III.**

Summary judgment as a matter of law is proper where there exists no genuine issue of material fact. Fed. R. Civ. P. 56(c)(emphasis added). In considering Pike's motion for summary judgment, this court has construed all evidence and drawn all reasonable inferences in favor of Mr. Dean, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but there simply exists insufficient evidence of the type of pattern contemplated by the few cases which analyze the extent to which an employer should have anticipated its employee's misdeeds at work. And, because the court is mindful of the Kentucky Supreme Court's unequivocal recognition that the Commonwealth's punitive damages statute is unique in the extent to which it limits an employer's vicarious liability, *Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001) ("Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages."), this court finds there does not exist sufficient evidence to present the issue of Pike's vicarious liability for punitive damages to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

DATE: